UNITED STATES DISTRICT COURT                    ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA                                   :
                                                           :
                        Plaintiff,                         :
                                                           :
            -against-                                      :    MEMORANDUM
                                                           :    AND ORDER
$421,090.00 in United States Currency,                     :    11-CV-00341(JG)
                                                           :
                        Defendant,                         :
                                                           :
            -against-                                      :
                                                           :
MICHAEL MORALES,                                           :
                                                           :
                        Claimant.                          :
                                                           :
-----------------------------------------------------------X

A P P E A R A N C E S:

    LORETTA E. LYNCH
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201
    By:    Evan S. Weitz
    *Attorney for Plaintiff*

    LAZZARO AND GREGORY, P.C.
        360 Court Street, Suite 3
        Brooklyn, New York 11231
    By:    James Warren Kirshner
    *Attorney for Claimant*

JOHN GLEESON, United States District Judge:

        On January 21, 2011, the United States filed a verified complaint *in rem* against $421,090 in United States currency (the "defendant funds"), seeking civil forfeiture of the defendant funds pursuant to 21 U.S.C. 881(a)(6). On April 1, 2011,

Michael Morales filed a verified claim asserting an interest in the defendant funds.[1] The government now moves to dismiss Morales's claim for lack of standing pursuant to Rule G(8)(c)(ii)(B) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the government's motion is denied.

BACKGROUND

A. *The Government's Allegations*

The funds were seized on August 12, 2010. According to the government's complaint, on that date, agents from the United States Drug Enforcement Administration ("DEA") observed Morales open the trunk of a car and look at two black suitcases inside. Morales then closed the trunk, got into the car, and drove away. The DEA agents followed and subsequently stopped the car on the basis that it had illegally tinted windows. As the agents approached the car after the stop, they saw a marijuana cigarette in Morales's possession. Morales got out of the car at the direction of the agents and consented to have it searched. The agents discovered the defendant funds inside the suitcases in the trunk. The funds were arranged in pre-determined bundles held together by rubber bands. Upon questioning, Morales claimed that he was borrowing the car from his brother, who had told him there was some money inside the trunk. Morales said the money might belong to his brother's father-in-law, "Charles," who owned several strip clubs in New York. Morales explained to the DEA agents that his brother and Charles

---

[1] No other claim of interest has been filed in this case, and any future claim would be untimely.

2

often traveled to give money to people who had been involved in disasters. Morales suggested that the defendant funds might have been intended for disaster victims.

B.  *Morales's Allegations*

Morales admits that the defendant funds were seized on August 12, 2010 from a vehicle he was driving, but he disputes many of the facts surrounding the seizure. According to Morales, he did not open the car's trunk before getting into the car and driving off. He also denies that the car had illegally tinted windows, and he claims that he was not holding a marijuana cigarette at the time he was pulled over. He admits that the DEA agents recovered a marijuana cigarette when they searched the vehicle but contends that they could not have seen it before they searched the car. According to Morales, the DEA agents who approached the car after the stop told him that the car had been involved in a robbery. He claims he was handcuffed the moment he stepped out of the car, and that he never gave permission to search. In fact, Morales alleges that he specifically and repeatedly denied the agents permission to open the trunk. Nonetheless, they eventually did so by pushing buttons on his keychain without his authorization.

Morales admits that he told the agents the car belonged to his brother, but he claims he never told them that his brother had informed him there was money in the trunk. Morales also denies that he said anything to the DEA agents about "Charles." In answer to Special Interrogatories submitted to him by the government, Morales claimed that he "received the Defendant Funds from another individual known only as 'Primo,' whereby [Morales] would retain $25,000 in United States currency from the Defendant Funds." Morales provided no further information about Primo and no corroboration for

his claim, except to state that Primo would have knowledge of the facts supporting his claim.

Also in response to the Special Interrogatories, Morales admitted to four prior arrests. First, he was arrested in June 2009 for possession of stolen property. He plead guilty to disorderly conduct. In September 2010, he was arrested for possession of marijuana. According to Morales, that case is scheduled to be dismissed. Morales was again arrested for marijuana possession in March 2011, and he plead guilty to disorderly conduct. Finally, a case is currently pending against Morales for possession of a controlled substance. In answer to the Special Interrogatories, Morales also admitted that he did not file federal or state income tax returns between 2005 and 2010.

C.  *Procedural History*

After the funds were seized on August 12, 2010, the DEA commenced administrative forfeiture proceedings against them. On November 10, 2010, Morales filed a claim to the funds with the DEA in the administrative proceedings. The government filed its complaint *in rem* in this court on January 1, 2011. On April 1, 2011, Morales filed his claim in this action. On April 20, 2011, he filed a verified answer to the complaint. The motion now before me followed on June 24, 2011. Oral argument was heard on the motion on July 22, 2011.

DISCUSSION

A.  *The Legal Framework Governing Civil Forfeiture Actions*

Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance [and] all proceeds traceable to such an exchange" are subject to civil forfeiture. Rules governing civil

forfeiture proceedings are set out in 18 U.S.C. § 983 and Supplemental Rule G. Under 18 U.S.C. § 983(1), where the government executes a seizure pursuant to a civil forfeiture statute such as 21 U.S.C. § 881, it must provide notice to interested parties. Any person claiming an interest in the seized property may file a claim with an appropriate official. 18 U.S.C. § 983(2). Where a claim has been filed, the government must commence a civil action *in rem* by filing a complaint for forfeiture in an appropriate court. *Id.* § 983(3)(A); Supp. R. G (1), (2). Any person claiming an interest in the property may then contest the forfeiture by filing a claim in the court where the civil action is pending. 18 U.S.C. § 983(4); Supp. R. G(5). However, "[b]efore a claimant can contest a forfeiture, he must demonstrate standing." *Mercado v. U.S. Customs Service*, 873 F.2d 641, 644 (2d Cir. 1989). If a claimant has standing, a court may then proceed to determine whether the government has established a sufficient basis for forfeiture. *See United States v. 38,000.00 in U.S. Currency*, 816 F.2d 1538 (11th Cir. 1987).

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub.L. No. 106-185, 114 Stat. 202, 18 U.S.C. § 983, the government must prove its right to forfeiture of an asset by a preponderance of the evidence. 18 U.S.C. § 983(c)(1) ("the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture"). In addition, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." *Id.* § 983(c)(3). To prevent forfeiture, a claimant who has standing "may either rebut the government's proof of a substantial connection or raise an innocent

5

owner defense under CAFRA." *Von Hofe v. United States*, 492 F.3d 175, 180 (2d Cir., 2007). An "innocent owner" is an owner of the property the government seeks to have forfeited who "(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstance to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A).

B. *Morales's Standing to Contest the Forfeiture*

To contest a civil forfeiture action, a claimant must have standing both under the statute governing the forfeiture proceedings and under Article III of the United States Constitution. *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999). The parties agree that Morales has satisfied the procedural requirements for statutory standing in this case. *See* Pl.'s Mem. Mot. Dismiss 3 n.1, June 24, 2011, ECF No. 9. However, the government contends that Morales cannot satisfy Article III standing, and it therefore moves to strike Morales's claim pursuant to Supplemental Rule G(8)(c)(B), which authorizes a governmental motion to strike a claim "because the claimant lacks standing."

In order to establish Article III standing, a party must "allege[] such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" *Baker v. Carr*, 369 U.S. 186, 204 (1962). More specifically, "a litigant must allege a distinct and palpable injury to himself, fairly traceable to the putatively illegal conduct of the defendant, and likely to be redressed by the requested relief." *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154,

1157 (2d Cir. 1994) (internal quotation marks and citations omitted). In this case, Morales claims an ownership interest in $25,000 of the defendant funds. If Morales indeed owns $25,000 of the funds, he will suffer a palpable injury – deprivation of the $25,000 – as a direct result of what he alleges would be an illegal forfeiture. *See Mercado*, 873 F.2d at 644-45 ("possession" of funds subject to forfeiture, if defined as custody plus a "right or interest of proprietorship," is sufficient to establish standing).

However, because the likelihood of false claims of ownership in civil forfeiture actions – where the government must publish notice of the proceedings – is high, the Second Circuit has held that "a naked claim of possession . . . is not enough" to establish standing. *Id*. at 645. Rather, "an allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture." *Torres*, 25 F.3d at 1158 (citing *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1113 (5th Cir. 1992)). In *Mercado v. United States Customs Services*, $181,590 were found in the luggage of an individual who asserted that he did not know the money had been there, that he did not know whose money it was, and that he did not care what happened to it. 873 F.2d at 645. That individual subsequently filed a claim, which was supported only by a "conclusory, hearsay, on-information-and-belief statement of [his] lawyer" that the claimant had an unidentified interest in the funds. *Id.* The Second Circuit held that the attorney's "hearsay and conclusory" assertion of an undefined interest, unsupported by any factual allegations whatsoever, was insufficient to support standing. *Id*.

In this case, by contrast, Morales has submitted a notarized, signed statement of his own articulating a particular interest in a portion of the funds and

providing a factual account to support that alleged interest. Specifically, he attests that he received the defendant funds from another individual named Primo, and that he was entitled to retain $25,000.[2] The government argues that Morales has failed to substantiate his alleged interest in at least a portion of the defendant funds, because he has not provided identifying information for Primo or offered documentation to support his claim. But Morales's asserted interest in the money is corroborated in part by the government's own allegation that the money was found in his physical custody. *See $38,570*, 950 F.2d at 1113 (where money was seized from vehicle claimant was driving, claimant "need not have supplemented his claim with additional evidence, because the government had admitted [his] relationship to the currency in its complaint"). Moreover, where a claimant alleges a specified interest in seized funds, he "need not explain this interest in detail . . . so long as he does something more than conclusorily state that he has some undefined 'interest.'" *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1057 (9th Cir. 1994) (superseded by statute on other grounds).

While the evidence in the record does not prove Morales's claim of ownership, it is sufficient to establish "a facially colorable interest in the [forfeiture] proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court." *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 78 (2d Cir. 2002) (internal quotation marks omitted)); *see also U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 499 (6th Cir.

---

[2] The government contends, and Morales disputes, that at the time of the seizure, Morales provided a different and incompatible account of the funds' source. As discussed below, Morales's purported statements at the time of the seizure may be inadmissible. They are also in dispute. I am unable to conclude at this preliminary stage that Morales in fact told the DEA agents about "Charles." Furthermore, even if Morales at one time denied ownership of the funds, that would not deprive his subsequent, sworn statement of its facial plausibility, which is all that is required to confer standing.

1998) ("While Jellinek's claim did not provide evidence of its ownership interest, in our estimation, Jellinek's claim of ownership, together with its answer to the Government's complaint and the Government's allegations of the nature of Jellinek's involvement with part of the seized currency are sufficient to establish its standing."); *$191,910.00*, 16 F.3d at 1057 ("Morgan has clearly claimed at least a possessory interest in the money at issue here. The government seized the money from his possession, and he had earlier claimed both possessory and ownership interests in it.")

Finally, the government contends that even if Morales's alleged interest in $25,000 of the funds is colorable, an interest in a portion of seized funds does not support standing to contest forfeiture of the entire amount. The government disregards "that what is adjudicated in a judicial civil forfeiture proceeding is the *government's* right to the property, not the claimant's. *$557,933.89*, 287 F.3d at 77 (emphasis in original). Standing is a preliminary question, used to determine only whether a claimant has a personal stake in the forfeiture proceedings such that he is a proper party to challenge the government's right to the property. *See Raines v. Byrd*, 521 U.S. 811, 818-19 (1997) ("The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit," which turns on whether the plaintiff has alleged "*personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." (internal quotation marks and citations omitted) (emphasis in original)). Morales's colorable ownership interest in even a portion of the funds is sufficient to establish a concrete interest in the proceedings as a whole. Accordingly, because he has established a facially colorable interest in these forfeiture proceedings, Morales has

established his standing to contest the government's proposed forfeiture of the entire amount.[3]

C.   *The Government's Summary Judgment Motion*

   1.   *The Legal Standard for Summary Judgment*

A motion for summary judgment should be granted only if the pleadings and documentary evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). "A fact is material if it might affect the outcome of the suit under the governing law." *Id*. The moving party bears the initial burden of demonstrating that no genuine factual dispute exists. *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). If the movant successfully makes this showing, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When applying these standards, the court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks omitted).

---

[3]   *Mantilla v. United States*, 302 F.3d 182 (3d Cir. 2002), which is cited by the government, is not to the contrary. In *Mantilla*, the government sought forfeiture of two sets of funds obtained in two separate seizures. The Third Circuit held that, "[b]ecause Customs obtained the two amounts - $900,000 and $95,000 – under distinct circumstances, [the claimant] must establish his standing as to each." *Id*. at 185. Here, by contrast, a single set of funds was seized together, and the propriety of forfeiting those funds is the subject of a single controversy.

2. *The Government's Right to Forfeiture*

The government argues that it is entitled to summary judgment on its forfeiture claim because (1) Morales's account of the defendant funds' source is implausible; and (2) the record demonstrates by a preponderance of the evidence that the funds are narcotics proceeds. The first argument misapprehends the initial burden of proof in a forfeiture proceeding. Before a claimant can be called upon to establish innocent owner status, the government must first "establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Moreover, "if the Government is seeking forfeiture, pursuant to 21 U.S.C. § 881(a)(6), on a theory that property constitutes proceeds traceable to an exchange for narcotics, it must demonstrate that those proceeds have a substantial connection to drug trafficking." *United States v. $22,173.00 in U.S. Currency*, 716 F.Supp.2d 245, 250 (S.D.N.Y. 2010); *see also United States v. 90-23 201st Street,* --- F.Supp.2d ---, No. 05-CV-5240 (ARR) (SMG), 2011 WL 1281209, at *16 (March 31, 2011). The Government "need not prove that there is a substantial connection between the property and any specific drug transaction," but it must at least "prove more generally, based on totality of the circumstances, that the property is substantially connected to narcotics trafficking." *United States v. U.S. Currency in the Sum $185,000*, 455 F.Supp.2d 145, 149 (E.D.N.Y. 2006) (citations omitted).

The government argues that it has established by a preponderance of the evidence that the seized funds are narcotics proceeds. It contends that possession of a large amount of cash is probative of narcotics sales, particularly when the cash is packaged in bundles bound with rubber bands, and particularly when the individual found

11

in possession of the cash provides inconsistent, unlikely and unsubstantiated statements regarding the money's origins. The government also points to Morales's "involvement with narcotics," citing the marijuana cigarette found in his car and his three prior arrests for possession of controlled substances. While this evidence may be sufficient to support a jury finding in the government's favor, it does not compel such a finding as a matter of law.[4]

In *United States v. $31,990 in United States Currency*, the government identified six factors that, it argued, together demonstrated a substantial connection between the seized funds and a narcotics exchange: (1) the amount of cash seized; (2) the method of bundling cash with rubber bands and plastic bags; (3) the failure of the individual from whose custody the cash was seized to provide a convincing, detailed account of the funds' source; (4) the custodian's travel itinerary, which paralleled that of a drug courier; (5) the custodian's possession of cocaine at the time of seizure; and (6) the affidavits of two experienced investigators that the seized currency was connected with the exchange of a controlled substance. 982 F.2d 851, 854-55 (2d Cir. 1993). The

---

[4] Morales contends that the DEA agents were without probable cause to stop the car he was driving at the time of the seizure because he did not have illegally tinted windows. He further contends that he did not give the DEA agents permission to search the vehicle, and that they were without probable cause to do so, in part because they could not have seen the marijuana cigarette before they conducted the search. The Second Circuit has made clear that "an illegal seizure of property does not immunize that property from forfeiture, that the property itself cannot be excluded from the forfeiture action, and that evidence obtained independent of the illegal seizure may be used in the forfeiture action." *United States v. $37,780 in U.S. Currency*, 920 F.2d 159, 163 (2d Cir. 1990). However, the Supreme Court has held that the exclusionary rule applies to civil forfeiture proceedings. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696 (1965). The Second Circuit has acknowledged that "[t]his circuit's exposition of [the *Plymouth Sedan*] holding remains . . . somewhat unclear," *$557, 933*, 287 F.3d at 80, but it has left open the possibility, and even the likelihood, that evidence other than the funds themselves obtained pursuant to an illegal seizure and search are inadmissible in a civil forfeiture action. Accordingly, if the Court were to agree that the DEA agents were without probable cause to stop the vehicle Morales was driving and without probable cause or permission to search it, any statements that Morales made to the agents on August 12, 2010 and the marijuana then found in his possession would be inadmissible in these proceedings. However, because I find that the government cannot prevail on its summary judgment motion even if this evidence is considered – and even if the government's account of Morales's statements about "Charles" is accepted as true – I need not determine the legality of the August 12 seizure and search or the admissibility of the evidence recovered that day.

Second Circuit, "[v]iewing these factors *in the light most favorable to the government*, . . . conclude[d] that, taken together, the inferences establish no more than a suspicion that the money was connected with the exchange of narcotics." *Id*. at 856 (emphasis added).

Here, where all inferences must be drawn against the government, a similar collection of factors is insufficient to establish, as a matter of law, a substantial connection between the seized funds and narcotics exchange by a preponderance of the evidence. Specifically, unexplained possession of a large amount of cash "supports an inference of illegal activity but does not suggest that the seized currency was tied to the exchange of a controlled substance." *Id*. at 855; *see also 90-23 201st Street,* 2011 WL 1281209, at *17 ("[W]hile Young's unexplained income supports an inference of illegal activity, it does not support an inference of narcotics-related activity."). The same is true with respect to Morales's incompatible and unsubstantiated explanations regarding the money's origins. The government cites *United States v. $37,780 in United States Currency*, 920 F.2d 159, for the proposition that "[e]vidence that a claimant made false, inconsistent, or implausible statements during the investigation can also demonstrate that money is subject to forfeiture." Pl.'s Mem. Supp. Mot. Dismiss 9, June 24, 2011, ECF No. 9. However, in that case, the Second Circuit stated only that an individual's "evasive, confused explanation for carrying such a large sum . . . only further aroused the suspicions of the government agents." 920 F.2d at 163. It did not hold that this factor demonstrated that the money was subject to forfeiture. Instead, it found that the government had probable cause to believe the money was subject to forfeiture where, by the time of the forfeiture proceedings, it had "not only determined the falsity of many of

the statements Hernandez made at the airport, but also established to a convincing degree his extensive involvement in drug activities." *Id.* at 163-64.

In this case – where the standard of proof is higher than in *United States v. $37,780* – the only evidence in the record suggesting narcotics activity is Morales's possession of a marijuana cigarette at the time of his arrest and his three prior drug-related arrests, two of which were for marijuana possession. While those two arrests, and the marijuana cigarette found in the car, "are relevant to infer personal use of drugs and access to drug dealers, [they do] not provide a strong inference that [Morales] was engaged in drug trafficking." *$31,990*, 982 F.2d at 855. The most recent arrest admitted to by Morales in his answers to the Special Interrogatories was for possession of a controlled substance with intent to distribute. That Morales has once been arrested for possession of a controlled substance with intent to sell is an insufficient basis for determining as a matter of law that the government has established by a preponderance of the evidence that the particular funds found in the trunk of the car he was driving on August 12, 2010 were substantially related to the exchange of narcotics. *See 90-23 201st Street,* 2011 WL 1281209, at *16 ("Standing alone, however, the court finds Young's [narcotics] convictions insufficient to establish, as a matter of law, the requisite connection by a preponderance of the evidence."). The record before me does not support a finding that the government has established as a matter of law a substantial connection between the defendant funds and the exchange of a controlled substance. Accordingly, the government is not entitled to summary judgment on its forfeiture claim.

## CONCLUSION

For the reasons stated above, the government's motion is denied. The trial of the case will occur on Tuesday, October 11, 2011. A final pretrial conference will be held on Friday, September 30, 2011 at 10:30 AM.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 27, 2011
      Brooklyn, New York